IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BERWYN CAPITAL INVESTMENTS,      :        CIVIL ACTION
INC.                             :
                                 :
          v.                     :
                                 :
SHORE VENTURE GROUP, LLC;        :
REVERSEBID.COM, LLC;             :
TERRENCE J. KEPNER;              :
and MATTHEW J. DYE               :
                                 :
          v.                     :
                                 :
AUTHENTIDATE HOLDING CORP.       :
and AUTHENTIDATE, INC.           :        NO. 01-cv-00691-JF


ADJUDICATION

Fullam, Sr. J.                              February 14, 2006

          This case was tried non-jury.  The record has been

supplemented by a stipulation concerning post-trial events.

After unduly protracted consideration, I have reached the factual

findings and legal conclusions which are set forth in this

adjudication.

I.   THE PARTIES

          All of the parties to this litigation were, at the

relevant times, involved in business activities related to the

internet – either conducting business at websites, promoting

software programs to be used on the websites of others, or

identifying sources of revenue-producing business for others.

          Plaintiff Berwyn Capital Investments, Inc. was

established by a young lady named Catherine Cellucci, a recent

law-school graduate, for the purpose of assisting start-up
companies to obtain financing, and, as related to this
litigation, to assist her clients in identifying possible sources
of business, and assisting in the establishment of ongoing
relationships.

Defendant and third-party plaintiff Shore Venture Group
LLC, a somewhat larger and more established firm, whose
principals were the individual defendants Terrence J. Kepner and
Matthew J. Dye, was also engaged in assisting other firms in
identifying and exploiting business opportunities on the
internet.

Third-party defendant Bitwise Designs, Inc. was the
owner of certain programs it had developed which were potentially
useful in conducting business on the internet, or in simply using
the internet.

One of these programs is entitled "Authentidate."  It
makes possible the authentication and electronic storage of
important documents, and immediate verification of the
authenticity of e-mails, and proof of their receipt.  Indeed,
Bitwise has now changed its name to Authentidate, Inc.  The
third-party defendants are Authentidate, Inc. and its parent,
Authentidate Holding Corporation.

Because all of the pertinent contracts were entered
into by Bitwise, the parties have, as a matter of convenience,

2

continued to refer to the third-party defendant as Bitwise, and I will do likewise.  The Chief Executive Officer of Bitwise is a gentleman named Botti, and its Chief Financial Officer is a gentleman named Bunt.

Another entity which, although not a party to this litigation, was very much involved in the events giving rise to the litigation is Crosswalk, Inc., a Virginia corporation described in the testimony as the world's largest Christian website, with millions of members.  It represented a potentially lucrative source of business for Bitwise and similar firms.

## II.  BACKGROUND

Ms. Cellucci, the principal of Berwyn, was acquainted with a gentleman named Scott Carroll, a former securities broker who was employed by Crosswalk.  She was also acquainted with the principals of Shore Venture, Messrs. Kepner and Dye.  In September and October 1999, these three began discussing the idea of working together to enable Bitwise – a client of Shore Venture – to establish its software programs on the Crosswalk website.

Shore Venture entered into a "referral agreement" with Bitwise, in which Shore Venture agreed to use its best efforts to enable Bitwise to get established on the Crosswalk website, and Bitwise agreed to compensate Shore Venture if and when certain successes were achieved.  Briefly, Bitwise was to pay Shore

Venture $35,000 upon execution of a written contract with
Crosswalk, and thereafter was to issue warrants for the purchase
of Bitwise stock at $3.50 per share: warrants for 50,000 shares
of stock upon signing of the contract with Crosswalk, another
50,000 shares when the website was up and running; and a third
and fourth increments of 50,000 shares each, if specified levels
of activity were demonstrated.  (Since it is agreed that the
third and fourth payments were not earned, we are concerned only
with the initial two tranches.)

It was agreed between Berwyn and Shore venture that
whatever revenue Shore Venture might derive from the Bitwise-
Crosswalk connection would be shared equally between Shore
Venture and Berwyn.  This agreement was confirmed in a letter
agreement dated December 9, 1999.  In addition, there was a
separate agreement between Berwyn and Mr. Carroll (the Crosswalk
representative) that Berwyn would share 50/50 with Mr. Carroll
whatever revenues Berwyn received.

The joint efforts of Shore Venture and Berwyn were
largely successful.  On or about December 29, 1999, the required
written agreement between Bitwise and Crosswalk was signed.
Under the terms of the referral agreement, Bitwise was then
required to pay to Shore Venture $35,000, and to issue warrants
for the first 50,000 shares of Bitwise stock at $3.50 per share;
and Shore Venture became obligated to share those items with

Berwyn.  Bitwise paid the $35,000, and Shore Venture duly paid Berwyn its $17,500 share.  The difficulty arose with respect to the warrants for the purchase of the first 50,000 shares of Bitwise stock.  The first problem was that the registration of the stock was not yet completed, and it was understood by all concerned that the warrants would not issue until the stock was registered.  Registration of the stock was completed in mid-February 2000, and, on February 25, 2000, Bitwise issued the warrants.

The warrants for all 50,000 of the shares were issued in Shore Venture's name, but, as between Shore Venture and Berwyn, Berwyn was entitled to 25,000 of the warrants.

Shore Venture promptly exercised its warrants to purchase 25,000 shares, purchasing them for $3.50 per share and simultaneously selling the shares at the then market price ($15.44 per share).

Under the express written terms of the warrants, it was provided that if the holder exercised the warrants as to only a portion of the shares, Bitwise would retain and cancel the original warrants, and would issue new warrants for the remaining shares.  Unfortunately, this did not occur; Bitwise retained the warrant document.

Although Shore Venture was fully cognizant of its obligation to share its compensation equally with Berwyn, – and,

indeed, to see to it that whatever compensation was received from Bitwise was made payable to Berwyn as well as Shore Venture – this part of the Berwyn-Shore Venture agreement was not promptly carried out.  Bitwise took the position that, since it had no agreement with Berwyn, its only obligation was to issue the 50,000 warrants to Shore Venture.  And, although, as noted above, the warrant documentation represented to Shore Venture that, after Shore Venture exercised the first 25,000 warrants, Bitwise would issue an amended document for the remaining 25,000 shares (which, presumably, could somehow have been assigned to Berwyn), the record makes clear that Bitwise was not particularly interested in expediting the issuance and redemption of the remaining 25,000 warrants.

The record also demonstrates that Shore Venture was in no hurry to get the matter resolved.  At one point, Shore Venture proposed to Berwyn that Berwyn put up the money for the 25,000 shares at $3.50, whereupon Shore Venture would obtain the shares, sell them, and turn the proceeds over to Berwyn – but minus 40% to cover taxes, and a 10% premium for the risk involved.  In short, under this proposal, Berwyn would have received only 50% of the amount due.

Actually, Ms. Cellucci was in a position to carry out the purchase and resale of the 25,000 shares without substantial expense: she could readily have obtained a one- or two-day loan

from her father and used the proceeds to purchase the shares, or she could have handled the matter through a broker at very modest expense.

At this point, a further complication developed: a friend of Cellucci's – an attorney who principally handled criminal cases and had no real grasp of the issues involved, filed suit on behalf of Berwyn in a federal district court in Delaware, against Shore Venture and Bitwise, in May 2000, asserting breaches of contract on the part of both defendants. This attorney apparently adhered to a strict policy of refusing to negotiate once litigation was started.  At any rate, when, in June 2000, Bitwise and Shore Venture had resolved the impasse, and had sent to Berwyn's attorney the necessary paperwork for the assignment of the warrants to Berwyn, the attorney took no action, and simply retained the assignment documentation – either because he wished to pursue the lawsuit, or because he simply did not understand the situation.  The Delaware lawsuit was eventually dismissed for lack of personal jurisdiction over either defendant.

Throughout the trial of this case, that stalemate continued.  After the trial concluded, Berwyn eventually received the 25,000 warrants which it could exercise, and, on October 20, 2003, Berwyn exercised the 25,000 warrants at $3.50 per share,

and re-sold the stock at the then-going price of $10.31 per share, realizing net proceeds totaling $170,250.

The events thus far described relate only to the first tranche of 50,000 warrants which Bitwise was obligated to issue. The second 50,000 warrants were due to be issued when the Crosswalk website was "implemented" – i.e., when the website was up and running, and open for business.  The evidence makes clear that this triggering event was completed by June 29, 2000, at the very latest.  On that date, Crosswalk issued a press release, approved by Bitwise, announcing the fact.  But Bitwise/Authentidate has not yet issued the warrants for the second tranche of 50,000 shares.

### III.  CONCLUSIONS AS TO LIABILITY

I have concluded that, as between plaintiff Berwyn and the defendant Shore Venture, the latter breached its contract by failing to make sure that the compensation received from Bitwise would be payable equally to plaintiff and Shore Venture; and, when this did not occur, by failing to expedite reasonable measures to cure the breach – i.e., by promptly arranging for the assignment of the 25,000 warrants to Berwyn.

I conclude, further, that Bitwise breached the terms of the warrants it issued to Shore Venture, by failing to issue amended documentation for the unexercised 25,000 warrants.  I conclude that this breach by Bitwise was a substantial factor in

causing Shore Venture's liability to Berwyn to increase.  Thus, in my view, Shore Venture is liable to Berwyn, but Bitwise is liable to Shore Venture for damages sustained by Berwyn in connection with the first 25,000 warrants.

Finally, I conclude that Bitwise/Authentidate is liable to both Shore Venture and Berwyn for failure to issue the second tranche of 50,000 shares.  Berwyn is also, apparently, liable to share with Mr. Carroll whatever recovery is obtained in satisfaction of that liability.

## IV.   DAMAGES

The evidence makes clear that all parties contemplated that, when the warrants were issued by Bitwise, they would promptly be exercised and the resulting shares simultaneously sold.  Hence, the damages in each instance are measured by the difference between the $3.50 strike price, and the market value of the shares on or about the date when the warrants should have been made available.  Shore Venture received the 50,000 warrants, and exercised them as to its 25,000 shares, on March 8, 2000.  On that date, the market price was $15.44 per share, and Shore Venture realized $298,500.  Absent the breaches found above, Berwyn would have likewise received a profit of $298,500.

The defendant is chargeable with having delayed the payout until mid-June 2000 (when the necessary documentation was furnished to plaintiff's then-counsel).  At that time, the stock

was selling for about $7.00 per share (or less).  But to hold
Shore Venture liable for the entire difference between the March
2000 and June 2000 prices would be inequitable, since Berwyn did
eventually receive its stock and exercised the 25,000 warrants
and received net proceeds totaling $170,250.  It seems to me that
the most equitable disposition of the damages issue is to hold
Shore Venture liable for the difference in price between March
2000 and October 2003, plus interest on the difference.  As I
calculate it, plaintiff was damaged in the amount of $128,250,
plus interest in the sum of $25,393.50, for a total of
$154.643.50.  That is the amount which Shore Venture owes to
plaintiff, and, in turn, which Bitwise owes to Shore Venture, in
connection with the first tranche.

Finally, I conclude that the second tranche of 50,000
warrants should have been issued on or about June 29, 2000, when
the market price was $5.97 per share.  By that time, all parties
were aware that half of the warrants were for the benefit of
Berwyn.  But for Bitwise's breach, plaintiff and Shore Venture
would each have realized $61,750 on or about that date, and the
judgments in favor of each of them should include interest from
and after that date.

## V.  THE INDIVIDUAL DEFENDANTS

Although various individuals are named as defendants or
third-party plaintiffs, the evidence provides no adequate basis

for imposing liability against any of these individuals, or in their favor.

VI.   <u>JUDGMENT</u>

For the reasons discussed above, judgment will be entered in favor of the plaintiff Berwyn Capital Investments, Inc. and against Shore Venture Group, LLC in the amount of $154,643.50, plus interest at 6% from and after October 20, 2003.

Judgment will be entered in favor of third-party plaintiff Shore Venture Group, LLC and against the third-party defendants, Authentidate Holding Corp. and Authentidate, Inc., in the sum of $154,643.50, plus interest.  Authentidate may satisfy this judgment by payment directly to plaintiff Berwyn Capital Investments, Inc.

Finally, judgment will be entered in favor of Berwyn Capital Investments, Inc. and against the defendants Authentidate Holding Corp. and Authentidate, Inc. in the sum of $61,750, plus interest thereon from and after June 29, 2000.  Judgment will also be entered in favor of the defendant Shore Venture Group, LLC and against third-party defendants Authentidate Holding Corp. and Authentidate, Inc., in the sum of $61,750, together with interest from and after June 29, 2000.

An Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BERWYN CAPITAL INVESTMENTS,          :          CIVIL ACTION
INC.                                 :
                                     :
            v.                       :
                                     :
SHORE VENTURE GROUP, LLC;            :
REVERSEBID.COM, LLC;                 :
TERRENCE J. KEPNER;                  :
and MATTHEW J. DYE                   :
                                     :
            v.                       :
                                     :
AUTHENTIDATE HOLDING CORP.           :
and AUTHENTIDATE, INC.               :          NO. 01-cv-00691-JF


ORDER

AND NOW, this 14th day of February 2006, for the reasons set forth in the foregoing Adjudication, IT IS ORDERED:

1.   JUDGMENT is entered in favor of plaintiff, Berwyn Capital Investments, Inc., and against the defendant Shore Venture Group, LLC in the sum of $177,019.30.

2.   JUDGMENT is entered in favor of defendant/third-party plaintiff Shore Venture Group, LLC and against third-party defendants, Authentidate Holding Corp. and Authentidate, Inc., in the sum of $177,019.30.

3.   JUDGMENT is entered in favor of plaintiff, Berwyn Capital Investments, Inc., and against the defendants Authentidate Holding Corp. and Authentidate, Inc. in the sum of $65,733.10.

12

4.   JUDGMENT is entered in favor of the defendant/third-party plaintiff Shore Venture Group, LLC and against third-party defendants Authentidate Holding Corp. and Authentidate, Inc., in the sum of $65,733.10.


                                   BY THE COURT:


                                   /s/ John P. Fullam
                                   John P. Fullam, Sr. J.